UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re

  MADISON COVE LLC

Chapter 11

Case No. 1-22-40467

          Debtor,

-----------------------------------------------------------x

    **PLEASE TAKE NOTICE**, that upon the annexed affirmation of Aviva Francis, with exhibits attached thereto, and upon the papers and proceedings herein, creditor JYTBG Collab L.P. ("JY") moves this Court before the Honorable Nancy Hershey Lord, at the United States Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York 11201, Courtroom 3577, on April 26, 2022 at 3:00 p.m., or soon thereafter as counsel may be heard, for an order pursuant to (i) pursuant to 11 U.S.C. § 1112(b) dismissing the Debtor's Bankruptcy Case for Cause *nunc pro tunc* retroactive from the date of filing; or (ii) pursuant to 11 U.S.C. § 362(d) annulling the automatic stay *nunc pro tunc* retroactive from the date of filing; (iii) confirming the Foreclosure Sale of the property known as, 458 Madison Street, Brooklyn, New York (Block 1826, Lot 26) (the "Property") held on March 10, 2022; (iv) for *in* rem relief relating to the Property and (v) for such other relief the Court deems just and proper.

    **PLEASE TAKE FURTHER NOTICE**, that objections to the Application and/or responsive papers, if any, must be in writing, must conform to the requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of the United States Bankruptcy Court for the Eastern District of New York and must be filed on or before April 19, 2022 by 5:00 pm with the Clerk of the Bankruptcy Court (with a copy to Chambers), and served

as so to be received by the attorneys of JY, Jacobowitz Newman Tversky LLP 377 Pearsall Avenue, Suite C, Cedarhurst, New York, 11516, Attention: Aviva Francis Esq., and the U.S Trustee at the Eastern District of NY, U.S. Federal Office Building, 201 Barick Street, Suite 1006, New York, New York 10014, on or before April 19, 2022 at 5:00 p.m. Parties with legal representation shall file with the court: (a) (i) through the Bankruptcy Court's electronic filing system (in accordance with General Order M-182) which may be accessed through the internet at https://ecf.nyeb.uscourts.gov and (ii) in portable document format (PDF) using Adobe Exchange software for conversion, or (b) if a party is unable to file electronically, such party shall submit the response or objection in PDF format on a diskette in an envelope with the case name, case number and title of document: or (c) if a party is unable to file electronically or use PDF format, such party shall submit the response or objection on a diskette in either Word, Word Perfect, or DOS test (ASCII) format.

Dated: Cedarhurst, New York
       March 16, 2022

                                     **JACOBOWITZ NEWMAN TVERSKY LLP**
                                     *Attorneys for JYTBG Collab L.P.*

                               By:    /s/ Aviva Francis    
                                    Aviva Francis
                               Evan M. Newman
                               377 Pearsall Avenue, Suite C
                               Cedarhurst, New York 11516
                               (516) 545-0343

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re

  MADISON COVE LLC

                                Chapter 11

                                Case No. 1-22-40467

        Debtor,

-----------------------------------------------------------x

**AFFIRMATION IN SUPPORT OF MOTION
FOR RETROACTIVE ANNULLMENT, TO DISISS THE CASE, VACATE
AUTOMATIC STAY AND FOR *IN REM* RELIEF**

      Aviva Francis, an attorney admitted to practice before this Court, under penalty of perjury, affirms:

      1.     That I am a member of the firm Jacobowitz Newman Tversky LLP and I make this affirmation in support of the motion of JYTBG Collab L.P.'s ("Movant" or "Lender") for an order (i) pursuant to 11 U.S.C. § 1112(b) dismissing the Debtor's Bankruptcy Case for Cause *nunc pro tunc* retroactive from the date of filing; or (ii) pursuant to 11 U.S.C. § 362(d) annulling the automatic stay *nunc pro tunc* retroactive from the date of filing; (iii) confirming the Foreclosure Sale of the property known as, 458 Madison Street, Brooklyn, New York (Block 1826, Lot 26) (the "Property") held on March 10, 2022; (iv) for *in* rem relief relating to the Property and (v) for such other relief the Court deems just and proper.

## JURISDICTION

      2.     This motion for relief from the automatic stay, is a contested matter brought pursuant to § 362(d) the United States Bankruptcy Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 4001, 9013 and 9014 (the "Fed.

R. Bankr. Pro."), of which this Court has jurisdiction pursuant to 28 U.S.C. § 1334, and is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**PRELIMINARY STATEMENT**

3.     The Chapter 11 case filed by Madison Cove LLC ("Debtor") is the Debtor's second unauthorized bad faith bankruptcy filing designed to prevent the third scheduled foreclosure sale relating to the Property known as 458 Madison Street, Brooklyn, New York (the "Property").

4.     The Lender commenced the foreclosure action relating to the Property in 2018. *See* Hofstedter Cert. at Exhibit #1 for the Summons and Complaint and Exhibits.

5.     Since the action was commenced, the Lender was prevented from proceeding with the foreclosure swiftly in state court because of the numerous delays caused by the defendants in the state court action including orders to show causes to stay the sale, which were denied. Finally, after obtaining its sale date for February 20, 2020, the Debtor filed for bankruptcy the same day staying the First Sale Date (the "First BK Filing").

6.     It became apparent at the creditor's meeting in the First BK Filing that Ms. Bennett's certification that she had authority on behalf of the Debtor was false and more importantly that the Debtor lacked authority without unanimous consent from the other 50% member, Heather Johnson a/k/a Heather Mcknish, to file the Bankruptcy.

7.     After months of delaying the First BK Filing, the Debtor's counsel conceded that it did not have the consent of the other member and voluntarily dismissed the First BK Filing.

8.     After delays resulting from First BK Filing and then numerous COVID related moratoriums, the Plaintiff was first able to reschedule a foreclosure sale for September 30, 2021. On September 29, 2021, the Debtor filed a hardship declaration which stayed the State court proceeding.

4

9.      After the stay was lifted, the Lender received the new sale date from the Court[1], March 10, 2022 at 11:40am.

10.      On March 10, 2022 at 10:22 am, Ms. Bennett on behalf of the Debtor filed a Chapter 11 Petition. Although the Debtor's counsel initially refused to provide a copy of the Petition, which was necessary in order to validate the Bankruptcy, upon reviewing the petition it was apparent that, again, Ms. Bennett filed bankruptcy for the Debtor without authority.

11.      Despite Lender's requests, the Debtor's counsel could not provide documents or confirm that the filing was with the Debtor's authority. This was the exact issue involving the first bankruptcy and was known to the Lender, the Debtor and Debtor's prior counsel. The Lender provided the Debtor's counsel a copy of the operating agreement and the communications leading up to the dismissal of the First BK Filing due to lack of authority in the event she was not in possession of this necessary and important information. The Debtor's counsel's could not provide any response or documents to support why this filing was any different to the prior unauthorized filing.

12.      Indeed, since the most recent filing, the Debtor; (1) failed to file any schedules; (2) failed to demonstrate that Ms. Bennet had the consent of the other member of the Debtor; (3) failed to make any post-petition payments to the Lender and (4) failed to pay outstanding real estate taxes and water exceeding $10,000 (there is currently over $5,000 due for taxes and another $5,000 for water). *See* Hofstedter Exhibit #5.

---

[1] It is relevant to note that the procedures to conduct foreclosure sales have drastically changed as there are a limited number of sales a week and the date is provided by the Court  - as of today, the next available dates the Court is providing are in August, 2022.

13.     In addition, in rem relief is warranted against the Properties because this is the Debtor's second unauthorized filing to stay a foreclosure sale without any intent to reorganize because there is a lack of authority.

JY'S INTEREST AS A FIRST MORTGAGE HOLDER

14.     JY respectfully refers to the certification of Alexander Hofstedter and the verified complaint annexed to the Hofstedter Cert. as Exhibit #1 for the background fact relating to JY's lien.

15.     For good and valuable consideration, on June 22, 2006, CPC provided a building loan to Madison Cove, LLC (the "Borrower" or "Debtor") in the principal amount of $548,900.00 (the "First Loan").  At the time the Borrower received the full amount of the First Loan.

16.     For good and valuable consideration, the Borrower, made, executed and delivered to CPC a building note in the principal amount of $548,900.00 dated June 22, 2006 (the "First Note").

17.     To secure the payment of the sum represented by the First Note, the Borrower, made executed and delivered to CPC a mortgage in the principal amount of $548,900.00 dated June 22, 2016 (the "First Mortgage").  The First Mortgage was recorded in the Office of the City Register of Kings County on July 18, 2006 as CRFN 2006000407909, upon which the mortgage tax was paid.

18.     By Assignment of Mortgage dated December 28, 2012, CPC assigned all of its rights, title and interests in the First Mortgage to Esquire Bank.  The Assignment of Mortgage was recorded in the Office of the City Register of Kings County as CRFN 2013000045184 on February 1, 2013.

19.     For good and valuable consideration on December 28, 2012, Esquire Bank provided a loan to the Borrower in the principal amount of $185,652.50 (the "Second Loan"). At the time the Borrower received the full amount of the Second Loan.

20.     For good and valuable consideration, the Borrower, made, executed and delivered to Esquire Bank a gap note in the principal amount of $185,652.50 dated December 28, 2012 (the "Second Note").

21.     To secure the payment of the sum represented by the Second Note, the Borrower, made executed and delivered to Esquire Bank a gap mortgage in the principal amount of $185,652.50 dated December 28, 2012 (the "Second Mortgage"). The Second Mortgage was recorded in the Office of the City Register of Kings County on February 1, 2013 as CRFN 2013000045185, upon which the mortgage tax was paid.

22.     To further secure the First Note, Second Note, First Mortgage, and Second Mortgage, the Borrower made, executed and delivered to Esquire Bank an Amended, Consolidated and Restated Note, dated December 28, 2012, consolidating the First Note and Second Note into a single obligation in the amount of $688,000.00 (the "Consolidated Note"). See a copy of the Consolidated Note attached hereto as Exhibit B to Exhibit #1.

23.     To secure the payment of the sum represented by the Consolidated Note, First Mortgage and Second Mortgage, on December 28, 2012, the Borrower made, executed and delivered to Esquire Bank a Mortgage Consolidation Modification and Security Agreement consolidating the First Mortgage and Second Mortgage into a single lien in the principal amount of $688,000.00 (the "CEMA"). The CEMA was duly recorded in the Office of the City Register of Kings County on February 1, 2013 as CRFN 2013000045186. See, a copy of the CEMA attached hereto as Exhibit C to Exhibit #1.

24.     To further secure the Consolidated Note and the CEMA, the Borrower, made, executed and delivered to Esquire Bank an Assignment of Leases and Rents in the principal amount of $688,000.00, dated December 28, 2012, and recorded in the Office of the City Register of Kings County on February 1, 2013 as CRFN 2013000045187.  See, a copy of the Assignments of Leases and Rents attached hereto as Exhibit D to Exhibit #1.

25.     To further secure the Consolidated Note and the CEMA, Joyce P. Bennett and Heather A. McNish f/k/a Heather A. Johnson (the "Guarantors") executed a General Guarantee (the "Guaranty") in favor of Esquire Bank. See, a copy of the Guaranty, along with the reaffirmation agreements thereto as noted below, attached hereto as Exhibit E to Exhibit #1.

26.     The Consolidated Note was then amended with an Amendment to Amended, Consolidated and Restated Mortgage Note made by the Borrower to Esquire Bank, dated January 2, 2018, but effective January 1, 2018 ("First Amendment").  See, a copy of the First Amendment with allonge attached hereto as Exhibit F to Exhibit #1.

27.     To further secure the Consolidated Note and the First Amendment thereto, the Guarantors reaffirmed their Guaranty with a reaffirmation agreement dated January 2, 2018. See, Exhibit E to Exhibit #1.

28.     The Consolidated Note was amended again with a Second Amendment to Amended, Consolidated and Restated Mortgage Note made by the Borrower to Esquire Bank, dated April 1, 2018 ("Second Amendment").  See, a copy of the Second Amendment with allonge attached hereto as Exhibit G to Exhibit #1.

29.     To further secure the Consolidated Note and the Second Amendment thereto, the Guarantors reaffirmed their Guaranty with a reaffirmation agreement dated April 1, 2018. See, Exhibit E to Exhibit #1.

30.     The Consolidated Note was amended again with a Third Amendment to Amended, Consolidated and Restated Mortgage Note made by the Borrower to Esquire Bank, dated June 1, 2018 ("Third Amendment").  See, a copy of the Third Amendment with allonge attached hereto as Exhibit H to Exhibit #1.  (The Consolidated Note, with the First Amendment, Second Amendment and Third Amendment, the CEMA, and The Assignment of Leases and Rents shall be referred to collectively as "Loan Documents").

31.     To further secure the Consolidated Note and the Third Amendment thereto, the Guarantors reaffirmed their Guaranty with a reaffirmation agreement dated June 1, 2018. See, Exhibit E to Exhibit #1.

32.     By Assignment of Mortgage, Assignment of Assignment of Leases and Rents, and Assignment of Loan Documents, dated September 20, 2018 and physical delivery of the original Loan Documents, including the Consolidated Note and the amendments thereto, with allonges firmly affixed thereto, Esquire Bank assigned all of its rights, title and interests in the Loan Documents to JY.  The Assignment of Mortgage was recorded in the Kings County Land Records under CRFN 2018000370126 and the Assignment of Assignment of Leases and Rents under CRFN 2018000370127, any applicable mortgage tax was duly paid.  A copy of the recorded assignments is attached hereto as Exhibit I of #1.

33.     JY commenced a foreclosure action on or about October 11, 2018, to foreclose on commercial real property known as 458 Madison Street, Brooklyn, New York (the "Property"). See, Hofstedter Cert. for Exhibit #1 for the Summons and Complaint and the exhibits.

34.     On or around December 24, 2019, the Court entered a judgment of foreclosure and sale. *See* Hofstedter Cert. for Exhibit #2.

35.     JY scheduled a foreclosure sale for February 20, 2020, but the sale was stayed because the Debtor filed for bankruptcy on February 20, 2020 (at that time JY was not aware that the filing was unauthorized) (the "First BK Filing").

36.     After the First BK Filing was dismissed (as discussed below), there were Covid Moratoriums on foreclosures which prevented rescheduling the sale until September 30, 2021. The day before the second sale, the Debtor filed a covid-hardship declaration which stayed the State court proceeding.

37.     Finally, after the moratoriums, the Court scheduled the sale for March 10, 2022 at 11:40am.

38.     The foreclosure sale was ultimately held and a third party bidder, Madison 260 LLC, was the highest bidder for a purchase price of $1,310,000. *See* Hofstedter Cert.at Exhibit #4 for the Memorandum of Sale.

39.     On March 10, 2022, after the Referee and the Plaintiff's representative and the potential bidders were either at the sale or on the way to the sale, the Debtor (through a different counsel) filed this unauthorized bad faith filing (the "Second BK Filing").

## THE DEBTOR'S FIRST BANKRUPTCY FILING

40.     On February 20, 2020, the Debtor filed its first petition for voluntary Chapter 11 under Case No. 20-41027 solely to stop the scheduled foreclosure sale.

41.     Within the First BK Filing, Ms. Bennett, the filer for the Debtor, filed conflicting affidavits. First, Ms. Bennett filed an affidavit referencing that she "holds a 50% interest in the Debtor and is its President." *See* DE #16 in the First BK Filing (*see* Exhibit A).

42.     Ms. Bennet also filed a document called "Unanimous Consent of Shareholder of Madison Cove LLC", and acknowledges that Ms. Bennett is only a 50% member and that

unanimous consent was required, yet the resolution was only signed by Ms. Bennett, not the other member. *See* [DE #20](#) in the First BK Filing (*see* Exhibit B).

43.     Ultimately after numerous hearings, Ms. Bennett and her attorney, conceded that she needed the authority of Heather A. McNish f/k/a Heather A. Johnson, the other 50% member in order to file for bankruptcy.

44.     The Debtor ultimately made a motion to dismiss the First BK Filing. In fact, the Debtor agreed that cause existed to dismiss the case and submitted in its motion the following argument:

> The Debtor submits that sufficient cause exists for the dismissal of its chapter 11 case, as its only appearing creditor is its mortgagee, JYTBG Collab L.P. Moreover, the Debtor coowner, Heather A. Johnson's refused to sign the required affidavits and consent to this Bankruptcy filing, **hence this bankruptcy must be dismissed**. Debtor has minimal unsecured creditors [emphasis added].

*See* [DE #26](#) in the First BK Filing (Exhibit C)

## THE DEBTOR'S SECOND BANKRUPTCY FILING

45.     On March 10, 2022 (at approximately 10:22am), just 1 hour before the scheduled foreclosure sale, the Debtor filed its second petition to stop Plaintiff's third scheduled foreclosure sale.[2] *See* Exhibit D for the Debtor' March 10, 2022 Petition.

46.     In light of the First BK Filing and the history of Ms. Bennett acting on behalf of the Debtor without authority, the Lender first requested a copy of the petition in PDF as the sale was imminent and the Referee and Representative were on their way or at the Courthouse. The counsel for the Debtor would not provide a pdf and instead advised that they will contact the Referee directly.

---

[2] Interestingly, despite the Debtor being represented by counsel in the Prior Bankruptcy who also appeared in the State Court proceeding, the Debtor found a new counsel to file the Second Petition, likely knowing that the prior counsel knew of the lack of authority and would not agree to file it again.

47.     The Lender also requested confirmation that the Petition was filed by the Debtor and that Ms. Bennet had the authority, unlike the prior filing, to file the Petition. The Debtor's counsel could not confirm that Ms. Bennett had authority and could not provide any resolutions or documents to support that Ms. Bennet had authority on behalf of the Debtor. In other words, there was nothing different about this filing than the last unauthorized filing that the Debtor conceded "must be dismissed."

## **RELIEF SOUGHT**

## I.     **THE CASE SHOULD BE DISMISSED RETROACTIVELY TO THE DATE OF FILING**

48.     Section 1112(b)(1) of the Bankruptcy Code states that the Court may dismiss a bankruptcy case for cause:

> (b) (1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).

49.     The Court should dismiss this bankruptcy case for cause because: a) it seeks to collaterally attack the Judgment of Foreclosure and Sale; b) Bennett has no authority to file this bankruptcy case since unanimous consent by 100% of the members is required; c) it is a bad faith filing used by Bennett to advance her own personal agenda and obtain a tactical advantage in a two party dispute between her and the Lender in the State Court; and d) the Debtor filed this exact petition two years ago and voluntarily dismissed the case after Ms. Bennett conceded that her filings contained false information that she had authority to file the bankruptcy.

50.     In addition , filing a bankruptcy an hour before a foreclosure sale is an improper purpose for bankruptc*y as this Court has repeatedly found. See In re HBA East, Inc*., 87 B.R. 248

(Bankr. E.D.N.Y. 1988) (granting dismissal when a filing was to prevent an action in a state court proceeding at the eleventh hour and finding that Chapter 11 relief should not be available to entities filing to obtain a perceived advantage in litigation with others or to provide an alternate judicial forum).

51.     As one court succinctly put it, 'the automatic stay was not intended to grant defendants a last-minute escape chute out of pending civil litigation.' […] In essence, these Chapter 11 cases involve little more than a private two party dispute. *Id.* at 259-260, 262.

### A. Bennett Has No Authority To File This Bankruptcy Petition On Behalf Of The Debtor.

52.     Since Bennett caused the Debtor's bankruptcy filing without authorization from the Debtor (for the second time), cause exists for this Court to dismiss the petition and deem the filing void.

53.     The lack of authority to file a voluntary chapter 11 bankruptcy petition by the party filing it constitutes an independent ground for "cause" for relief under § 1112(b) of the Bankruptcy Code. See In re NNN 123 N. Wacker, LLC, 510 B.R. 854, 858 (Bankr. N.D. Ill. 2014) ("In addition to 'cause' under § 1112(b), lack of corporate authority to file is an independent ground for dismissal of a bankruptcy case filed by a corporation.") (*citing Price v. Gurney*, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L. Ed. 776 (1945); *In re ComScape Telecomms., Inc.*, 423 B.R. 816, 829 (Bankr. S.D. Ohio 2010) ("It is well established that lack of authority to commence a bankruptcy case constitutes cause for dismissal.") *(citing In re A-Z Elecs., LLC*, 350 B.R. 886, 891 (Bankr. D. Idaho 2006)). *In re 167 W. 133rd St. Hous. Dev. Fund Corp.,* 2018 Bankr. LEXIS 2909 (S.D.N.Y. Bankr. 2018).

54.     State law governs a Debtor's authority to file a voluntary petition in bankruptcy. *See In re Quad—C Funding LLC,* 496 B.R. at 141 ("[T]he Bankruptcy Code does not

establish express rule relating to authority to file a voluntary petition for relief. In order to determine authority to file, courts initially look to the state law governing the entity.") (citations omitted); *In re Am. Globus Corp.*, 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996) ("[t]he authority to file a bankruptcy petition on behalf of a corporation must derive from state law.")

55.     Authority to file a bankruptcy petition on behalf of an entity is governed by state law. *See Price v. Gurney*, 324 U.S. 100, 106 (1945); *Keenihan v. Heritage Press, Inc*., 19 F.3d 1255, 1258 (8th Cir. 1994) ("A person filing a voluntary bankruptcy petition on a corporation's behalf must be authorized to do so, and the authorization must derive from state law"); *In re American Globus Corp.*, 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996) ("The authority to file a bankruptcy petition on behalf of a corporation must derive from state law.")

56.     Here, the Debtor's operating Agreement provides that Bennett is a 50% member with Heather Johnson being the other 50% member and unanimous consent is needed for the Debtor to take any action. *See* Hofstedter Cert. at Exhibit #3 for the Operating Agreement.

57.     What is more egregious here, is that on February 20, 2020, also on the eve of the first foreclosure sale, Ms. Bennett filed a Chapter 11 Petition on behalf of the Debtor and after the creditors meeting it was revealed that the Debtor lacked the authority to file the petition and did not have the consent of the other 50% member. As a result, the Debtor voluntarily dismissed the Petition.

58.     In fact, Ms. Bennett, clearly admitted in the First BK Filing that she lacked authority to file the bankruptcy. It was explicitly addressed in the Debtor's motion to voluntary dismiss the First BK Filing for cause. *See* Exhibit C, *supra.*

59. Ms. Bennet did the exact same thing on March 8, 2022, the day of the third scheduled foreclosure sale. Ms. Bennet does it again and filed for Chapter 11 on behalf of the Debtor without authorization.

60. Despite the reasonable request, and in light of the history of this debtor, the Debtor and its counsel were unable to provide anything indicating that the Bennett filed the Second BK Filing with authority.

61. Under New York law, the Debtor's filing listing Bennett as the "Operator" is simply not enough. *See In re NNN 123 N. Wacker*, LLC, 510 B.R. 854, 860-61 (Bankr. N.D. Ill. 2014) (dismissing chapter 11 case for cause pursuant to section 1112(b) where undisputed documents demonstrated "more probably than not that [filer of the petition] was not authorized by its many members to file for bankruptcy," and the "putative debtor[]" did not carry its burden in rebutting that evidence.); *In re Pasta Bar by Scotto II, LLC*, No. 15-12766, 2015 Bankr. LEXIS 3941, 2015 WL 7307246, at *3 (Bankr. S.D.N.Y. Nov. 19, 2015) (dismissing chapter 11 case where member of debtor filed the bankruptcy petition without obtaining the consent of the other members in a supermajority vote, as required by the debtor's operating agreement).

## B. The Debtor's Filing Is In Bad Faith

62. The filing of a bankruptcy petition in bad faith is also grounds for dismissal, either by motion of an interested party or *sua sponte*. *C-TC 9th Avenue Partnership v. Norton Co.* (*In re C-TC 9th Avenue Partnership*), 113 F.3d 1304 (2d Cir. 1997) (affirming dismissal where "the Chapter 11 filing was made with no hope of reorganization and at the very moment that the state litigation had taken a turn adverse to C-TC, making mortgage foreclosure imminent."). As the Second Circuit stated in C-TC 9th Avenue, "[w]hen it is clear that, from the date of filing, the

debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the Chapter 11 petition may be frivolous." *Id.*

63. The Court held in *In re Spectee Group, Inc.,* 185 B.R. 146, 155 (Bkrtcy.S.D.N.Y.1995) that, "the bad faith inquiry focuses on the debtor's 'honesty of intention, and requires the bankruptcy court to determine whether the debtor misrepresented facts in its submissions, unfairly manipulated the Bankruptcy Code, or otherwise proposed a plan in an inequitable manner." The Court added that "bad faith exists where the debtor lacks any realistic possibility of reorganization, and files the petition for the sole purpose of frustrating or delaying its secured creditor's efforts to enforce its legitimate rights." *Id.*

64. The Debtor's bankruptcy filing was not just unauthorized, it was made in bad faith as it was the second unauthorized filing and there cannot be any way to reorganize without 100 % consent of the members.

65. The Second Circuit in I*n re C-TC 9th Ave. P'ship*, 113 F.3d at 1311, identified eight factors that are indicative of a bad faith bankruptcy filing: (1) The debtor has only one asset; (2) The debtor has few unsecured creditors, whose claims are small in relation to those of secured creditors; (3) The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) The debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which could be resolved in a pending state foreclosure action; (5) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) The debtor has little or no cash flow; (7) The debtor cannot meet current expenses including the payment of personal property and real estate taxes; and (8) The debtor has no employees. *Id.*

66.     All or nearly all the factors are met here, since: (1) the Debtor's sole asset is the Property (*see* the Petition); (2) the Debtor has not listed any unsecured creditors (*see* the Petition) (3) the Debtor's sole asset, is the subject of a litigation in the State Court and is subject to foreclosure (4) the timing of the Debtor's filing just an hour before a scheduled foreclosure sale; (5) the Debtor has little or no cash flow; (6) the Debtor has not a single unsecured creditor; (7) the Debtor has not been paying the real estate taxes for 2022 and has not paid the water (there is over $10,000 due to the City); and (7) the Debtor has no employees and has no business at all.

67.     As a result, JY has shown the subjective bad faith in filing this bankruptcy case and that the case is objectively futile since there was no corporate authority for its filing and Bennett cannot make decisions for the Debtor. Accordingly, although "bad faith" is not enumerated under §1112(b), it is well settled that the filing of a petition in bad faith constitutes "cause" for dismissal or conversion of a case under Bankruptcy Code Section 1112(b). *In re Artisanal 2015, LLC,* 2017 Bankr. Lexis. 3813, *26 (Bankr. S.D.N.Y. 2017).

### C. The Court Should Dismiss This Case Since It Is An Impermissible Collateral Attack Against the State Court's Judgment.

68.     The Court in *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 335-336 (Bankr. S.D.N.Y. 2001) explained:

> "It is an extremely common occurrence that a debtor in Chapter 11, 12 or 13, wishes to move a vitriolic matrimonial proceeding, mortgage foreclosure, or tort suit into the bankruptcy forum, and then attempt to utilize the bankruptcy forum as a sword - a new weapon in the arsenal of vitriol. Without exception, this Court does not permit such a tactic." (citing In re Head, 223 B.R. 648, 653 [Bankr. W.D.N.Y. 1998]).

69.     Accordingly, this Court should dismiss this case under §1112(b)(1) since it impermissibly seeks to use bankruptcy solely to prevent the enforcement of a state court judgment.

## II.  THE COURT SHOULD CONFIRM THE MARCH 10, 2022 FORECLOSURE SALE AND THE CASE SHOULD BE DISMISSED OR THE STAY LIFTED RETROACTIVELY

70.     As set forth above, the Debtor's unauthorized and bad faith filing warrants the Court to dismiss the Petition *nunc pro tunc* from the time of filing. Courts have held that when it is so apparent that the intention of the Debtor's filing was solely to obtain an automatic stay to prevent a foreclosure sale, the Court has the power to dismiss the petition *nunc pro tunc* from the date the petition was filing. *See In re Plagakis*, 2004 WL 203090 (E.D.N.Y. Bankr. 2004) (debtor's bad faith in filing justified dismissal of petition nunc pro tunc, so as to validate mortgage foreclosure sale).

71.     As the Second Circuit has noted, the automatic stay "is effective immediately upon the filing of the petition, and any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect ." *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 527 (2d Ci r.1994) (citing, *inter alia, In re Fugazy Express, Inc.,* 982 F.2d 769, 776 (2d Ci r.1992)). However, a bankruptcy court has the power to take measures that grant relief from the automatic stay, including "terminating, annulling, modifying, or conditioning" the stay, under certain circumstances. 11 U.S.C. § 362(d); *see also E. Refractories Co. v. Forty Eight Insulations Inc*., 157 F.3d 169, 172 (2d Cir. 1998) (retroactive annulment of the stay validates actions taken in contravention of such stay, whereas termination, modification, and conditioning generally take effect only as of the date such relief is granted).

72.     Particularly relevant here, a Bankruptcy Court may enact an "annulment"-granting relief from the automatic stay *nunc pro tunc,* thereby retroactively lifting the stay to permit a certain otherwise forbidden course of action, such as a civil litigation or a foreclosure proceeding; *In re Plagakis,* No. 03 Civ. 0728, 2004 W L 203090, at * 5 (E.D.N.Y. Jan. 27, 2004) (quoting the

Bankruptcy Court's observation that the debtor had "filed a skeletal petition minutes before a foreclosure sale" with the plain intent to prevent foreclosure "without the ability or the intention to reorganize", and thus finding that the "the Bankruptcy Court correctly found that Debtor's bad faith in filing for Chapter 13 relief justified dismissing his petition *nunc pro tunc* in order to validate the mortgage foreclosure sale ."): *NKL Enterprises, LLC v. Oyster Bay Management Co.*, LLC, 2013 WL 1775051 (Bank. E.D.N.Y 2013) (granting an annulment of the automatic stay retroactively to the date of filing due to the bad faith filing); *In re Chispoto,* 487 B.R. 80 (District of Puerto Rico, 2013) (retroactively lifting the stay).

73.    Here, as set forth above, there are numerous reasons why the Court should retroactively lift the stay and determine that the foreclosure sale held within an hour of the unauthorized bath faith filing was proper.

### A) This Court Is Permitted To Validate A Post-Petition Foreclosure Because It is "Voidable" Not "Void"

74.    The question of whether a Court can annul the automatic stay retroactively in order to validate a post-petition mortgage foreclosure say was answered in the affirmative by this District in *In re Hall,* 216 B.R. 702 (Bankr. E.D.N.Y 1998) (annulling the automatic stay retroactively to affirm a post-petition foreclosure sale and further dismissing the case with prejudice to prevent further abuse of the bankruptcy Courts).

75.    The question in *Hall* was whether post-petition sales are void or voidable. This Court in *Hall* held that although there is history as to whether a sale can be voidable, the language in 362(d) permits retroactive annulment of the stay and therefore held that a post-petition foreclosure sale is voidable. *See In re Hall, supra.*( "the court-appointed referee, when he or she conducts the foreclosure sale, is engaging in a ministerial act, one that does not entail any further

exercise of discretion by a judicial officer" and can arguable be deemed a ministerial act that does not violate the stay).

76.     Here, in addition to the fact that the foreclosure sale was just a ministerial action to enforce a judgment, as set forth above, the Court has ample reason to dismiss the case and annul the stay retroactively from the date of filing.

### III.     UPON GRANTING THE MOTION, THIS COURT SHOULD GRANT *IN REM* RELIEF AGAINST THE PROPERTY

77.     In addition to lifting the stay, this Court should grant the Lender in rem relief relating to the Property.

78.     Section 362(d)(4) provides:

with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—

> a.      transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
>
> b.      multiple bankruptcy filings affecting such real property.
> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

79.     Here, in rem relief is warranted under both 362(d)(4) (B).

80.     Under the circumstances set forth above, where the Debtor filed two unauthorized bankruptcies on the day of foreclosure sales; (2) failed to make any efforts to pay taxes, adequate protection payments and/or file a plan; (3) failed to demonstrate any feasible way to pay the amounts owed to JY, *in rem* relief against the Propertys is appropriate.

81.    *In rem* relief is also important to ensure that to the extent the Debtor seeks further protection from the stay in any further proceedings JY will not need to take as part of it which will simply just result in the accrual of interest and attorney's fees making it more unlikely for the Movants to recover the amounts owed to them.


IV.    **REQUEST FOR WAIVER OF RULE 4001 STAY**

82.    Waiver of the stay invoked pursuant to Bankruptcy Rule 4001(a)(3) is sought so that Movant and its successors and/or assigns can immediately proceed with the foreclosure action. The foreclosure has been significantly delayed. No further delay is warranted.

83.    The Lender submits that the foregoing constitutes cause for vacating the stay as to JY and for in rem relief relating to the Properties.


Dated: March 16, 2022


**JACOBOWITZ NEWMAN TVERSKY LLP**
*Attorneys for JYTBG Collab L.P.*


By: ___/s/ Aviva Francis_____
        Aviva Francis
      Evan M. Newman
      377 Pearsall Avenue, Suite C
      Cedarhurst, New York 11516
      (516) 545-0343